[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of writ, summons and complaint dated January 23, 2002, filed on February 11, 2002 and a return date of February 19, 2002. In said complaint the plaintiff petitioner sought a dissolution of the marriage, custody of the minor children, custody of the minor children pendente lite, support for the minor children, support for the minor children pendente lite, exclusive possession of the family home, a property settlement and such other relief as the court deems just and proper.
Accompanying the complaint were several motions including a motion for custody and support pendente lite and exclusive possession of the family home. This motion was the subject of an agreement dated March 11, 2002 and approved by the court, Devine, J.
The usual automatic orders were attached to the complaint.
The return of the sheriff, Thomas Burke, accompanied the papers.
On February 19, 2002, counsel filed an appearance for the defendant and on the same date filed an answer to the complaint and a cross complaint. The answer corrects certain errors in the complaint; to wit, the date of the marriage, the spelling of the names of the children. The cross complaint also sets forth the defendant's maiden name.
In the cross complaint, the defendant claimed a dissolution of the marriage, custody, child support, alimony, exclusive use and possession of the home, contribution to debts, an equitable property settlement and such other relief as the court might feel proper.
On February 19, 2002, in addition to the foregoing, the defendant by counsel filed a motion for exclusive possession of the family home and CT Page 13063 the earlier noted stipulation of the parties was accepted by the court.
A further motion was filed by counsel on behalf of the defendant as concerns custody, support, alimony and debts. This apparently was acted on also in accordance with the March 11, 2002 order by the court.
The March 11, 2002 agreement and stipulation accepted by the court concerned itself with a reference to Family Relations for mediation, an arrangement as concerns the plaintiff and the defendant supervising and monitoring the children, the entry of an order whereby the plaintiff would pay child support in the amount of $193.00 a week, and alimony pendente lite in the amount of $107.00 a week. Financial affidavits were filed by both of the parties on the March 11 date referred to.
On and after March 11, a number of motions were filed with the court including a motion for return of personal property filed on behalf of the plaintiff, a motion for a restraining order that was filed April 9, 2002, which motion does not appear to have been acted upon; a motion for an appraisal of property filed on August 14, 2002; a motion for suspension of alimony filed September 11, 2002; an application for relief from abuse was filed by the plaintiff on September 12, 2002 with affidavit attached thereto, but it does not appear that the same was acted upon. There were also subsequent motions for contempt.
The plaintiff and the defendant with their respective counsel appeared before the court on October 3, 2002 and the matter was heard to a conclusion.
The court makes the following findings of fact:
The plaintiff and the defendant were united in marriage on August 5, 1989 at Norwich. The defendant's maiden name was Nasso. The parties have resided in this state continuously for more than one year prior to the initiation of the complaint or cross complaint.
The plaintiff and the defendant have two minor children issue of this marital union whose names are Tiffani Marie Nordgren born March 9, 1996 and Travis Mikel Nordgren born September 28, 2000. No other children have been born to the defendant wife on the basis of the testimony elicited at trial. Neither party has been the recipient of welfare from the State of Connecticut or any town, city or subdivision thereof.
On the basis of the testimony of the plaintiff, it appears that problems in the marital union began in 1997 on the occasion of the defendant's grandmother passing away. The defendant apparently being very CT Page 13064 close to her grandmother.
At the time of the initiation of problems in the marriage and for some time prior thereto, each of the parties, incident to their employment, worked on different shifts and this apparently created some problems.
According to the plaintiff's testimony, the defendant became unhappy in the marital relationship and resorted to a friendship outside the marital union and apparently acknowledged this relationship to the plaintiff. Reference is made to Plaintiff's Exhibit I, which will be touched upon in due course.
Due to matters of stress incident to employment and a young family, apparently on occasion the defendant resorted to the immoderate use of alcohol.
Although an issue apparently was somewhat earlier raised, there is no claim by either of the parties but what the two children are the lawful issue of this marital union.
Apparently the defendant suffered stress and was unhappy with regard to the fact that the husband worked on the second shift and she worked during the daytime and this provided little time for them to have any sort of personal life. It was the plaintiffs claim that he endeavored to make the marital union more tolerable by virtue of invitations for outside activities, dinner and so forth, but that the defendant declined.
Counseling was suggested and on one occasion, the defendant, apparently in a state of stress, indicated that she had no feelings any longer for the plaintiff and that her presence in the home was to support and maintain the welfare of the children.
According to the plaintiff. the defendant refused to participate in counseling. The defendant disputes this.
It is the plaintiffs claim that the defendant's relationship with a friend outside the marriage caused the breakdown of the marriage. Be that as it may, at the present time the plaintiff acknowledged that he has a friend and resides with the friend.
There was an occasion in December of 2001 where the plaintiff, incident to his employment, presumably attended a union dinner where he was to be elected as a trustee. The defendant apparently objected to his attendance at that affair and called him at the place of assembly and requested that CT Page 13065 he return to the home. The plaintiff apparently declined and as a result thereof the defendant undertook a course of conduct which led in part to the partial damage and vandalism of the plaintiffs Harley Davidson motorcycle. The court will touch on the photographic exhibits incident thereto. It was the plaintiffs claim that the destruction wrought on the motorcycle caused him a substantial loss.
The plaintiff is presently paying, incident to the stipulation, $193.00 a week child support.
The plaintiffs only income is from his employment and position.
Apparently at one point in time, the defendant frequently would call the plaintiff at work and also his employer, which apparently created a problem. The plaintiff at that time requested an order that the defendant should not trouble him at work.
The defendant, in her testimony, claimed that her outside-of-the-marital-relationship friendship terminated in 1998 and that the conduct of the plaintiff started in 2001.
The defendant apparently declined to participate in marriage counseling in November of 2001.
At the time that the petition for dissolution was served on the defendant, she was apparently emotionally distraught and took a brief leave of absence from her position.
The plaintiff removed himself from the marital home on or about February 1, 2002.
On one occasion as a result of domestic difficulty, the authorities were called to the home. The plaintiff apparently was arrested. It is unclear whether any formal action was taken against the defendant.
As concerns the plaintiffs present residence, which he shares with a friend, the testimony was to the effect that he pays the sum of $300.00 a month and his friend pays the difference.
Apparently the parties are in agreement that at the time of trial there is an arrearage as to either alimony or support in the amount of $428.00, which the plaintiff acknowledged and agreed to pay and bring current.
After the vandalism inflicted upon the motorcycle by the defendant, two CT Page 13066 weeks later the vehicle was sold, apparently at a loss.
On or about January of 2002, the defendant closed out a joint savings account securing the sum of $3,400.00.
The plaintiff claims that the credit card debts are mostly the result of actions by the defendant and that at one time he gave her a check to cure his share of any credit card debt.
The plaintiff is age 35. He describes his health as good. He is now on medication for kidney stones. He graduated from the Norwich Free Academy and therefore has a high school diploma. As noted, the parties were married on August 5, 1989. This was the first marriage for both. The plaintiff has been with his employer for 14 years and as to the children, the child Tiffani is age 6, her health was described as good. She is in the first grade and doing well. The child Travis is age 2, good health, manifestly still a toddler.
It was the plaintiffs attitude that the outside relationships were attributable to the fact that the parties worked separate shifts and did not have much common time to try to keep things together.
The plaintiffs testimony was to the effect that the marriage had irretrievably broken down.
Mindful of the new public act with regard to post-high school education, on inquiry the plaintiff responded to the court that he was desirous of having the court enter an interim order in order that the door may be left open for subsequent consideration as concerns the education of the children.
The defendant Yvonne C. Nordgren is age 34. She is a high school graduate having attended Norwich Free Academy. In addition thereto, she has had two years in evening courses in accounting. She described her health as good. She is presently being treated for certain menstrual disorders, suffers on occasion panic and anxiety attacks and acknowledged clearly that the plaintiff was the father of both of the two children noted herein.
The defendant acknowledged writing the letter which is set forth in Plaintiff's Exhibit 1, which is in her hand.
The defendant testified that there were considerable stresses in the marriage by virtue of her being a parent and caring for the oldest child initially while holding down a full-time job. CT Page 13067
The defendant's position was that the outside friend had befriended her and endeavored to be supportive of her. The defendant was candid with regard to the nature of the relationship. The defendant on her own was motivated to terminate the relationship.
The defendant characterizes herself as a homebody and again touched on the stresses in the union.
On November 13, 2001, the plaintiff called the defendant by phone and indicated to her that he had a friend. At that time, the defendant took a brief leave of absence from her job in an effort to try and preserve the marriage.
The parties went to counseling initially. They were both unhappy with the counselor originally selected. The plaintiff attended on three or four occasions and then stopped.
It was the plaintiffs rather cavalier attitude evidenced over the phone at the union dinner wherein the defendant entreated him to return home that apparently, according to her, set her off with regard to the damage to the motorcycle. Afterwards, feeling remorse, the defendant promised to fix the vehicle in order to try and preserve the marriage.
On January 30, 2002, apparently there was a further problem in the marriage where the defendant's diary was taken, which precipitated in part the plaintiff's arrest at that time.
There was also a problem with regard to the defendant's credit cards, which were reported as stolen.
The defendant acknowledged that the marriage has irretrievably broken down.
The defendant's request was for periodic alimony for a period of 6-1/2 years.
There was no request made for resumption of her maiden name.
The defendant is on a regimen of medication which includes Prozac.
She has been at Phelps Dodge instant to her position for 13 years and is a shipping coordinator.
The defendant acknowledged taking the $3,400.00 from the Fleet Bank CT Page 13068 checking account incident to trying to maintain financial stability.
Review of Exhibits
Plaintiff's Exhibit I is a handwritten, ten-page letter or communication written by the defendant and directed to the plaintiff in which exhibit the defendant recites her emotional upset and the initiation of a relationship with a co-worker who befriended her. The exhibit recites how the defendant felt under considerable stress, that she cried a lot and was emotionally torn about the relationship with her co-worker friend. The defendant terminated this relationship in December of 1998 and the exhibit goes on to express the defendant's willingness to try and save this marital union and asks for the plaintiff's forgiveness. At the end of this exhibit, the defendant makes reference to the plaintiff's friendship with another.
Plaintiff's Exhibit 2, mislabeled as Plaintiff's B, is an employee information check analysis from the plaintiffs employer, Caraustar Custom Packaging Group as concerns the earnings of the plaintiff for the period 12/30/2001 through 6/09/2002 showing weekly gross pay, weekly net pay, total gross pay for the period stated $24,481.34, total net pay for employee appears to be $15,053.76.
Defendant's Exhibit A is a CIGNA retirement and investment services statement concerning the plaintiff incident to his employment with Caraustar Industries and their retirement plan setting forth a variety of data with regard to the plaintiffs age, credited service, vesting service, date of participation and indicating that any benefits incident thereto would commence on 12/01/2031 at age 65 for a life annuity of $220.00 a month.
The only other exhibit, mislabeled Defendant's Exhibit 10, is a letter from plaintiffs counsel to the plaintiff touching on the effect of automatic orders.
There are also eight colored photographs, Plaintiff's 2 through Plaintiff's 9, showing the extent of damage to a motorcycle owned by the plaintiff and damaged by the defendant in a fit of emotional upset as concerns problems existing in the marital union.
Review of the Financial Affidavits
The financial affidavits submitted by the plaintiff indicates that his position with his employer Caraustar Custom Packaging Group is that of a lead man. The employer is located in Versailles, Connecticut. Gross CT Page 13069 weekly wage, $993.00; deductions for taxes, union dues, insurance, uniforms, etc., $302.02 for a net of $690.98. Expenses reflected upon the plaintiffs financial affidavit purport to total $702.00. No debts or obligations are reflected on the face sheet of the affidavit. The property at 411 Rockville Road in Voluntown is valued by the plaintiff at $175,000.00 with a mortgage of $138,000.00 for an equity as to the plaintiff's share of the same, $18,500.00.
A 1995 Toyota pickup motor vehicle not valued, with a loan balance of $9,600.00; Eastern Savings checking account, $350.00; credit union account, $525.00. The plaintiffs 401K is shown on the affidavit as being valued at $22,000.00 and a pension value described as unknown; the CIGNA exhibit earlier referred to perhaps is dispositive on that.
Also attached to the plaintiffs financial affidavit is a further employee pay history covering the period 7/3/2002 through 9/26/2002 showing gross pay mostly in the category of $991.00 ± with some weeks showing $1,127.00.
From the defendant's financial affidavit, her employer is Phelps Dodge Industries, Inc., her gross weekly wage is $640.46; deductions for federal and state taxes, FICA, a 401K deduction and medicare, $155.47 for a net weekly wage of $484.99. The financial affidavit reflects child support of $193.00 a week and alimony of $107.00 a week; total present net weekly income, $784.99. Weekly expenses, $868.90; debts and obligations, a personal loan to the defendant's parents $400.00; an obligation to Sears, $309.00 and counsel fees.
The defendant values the property known as 411 Rockville Road in Voluntown at $175,000.00 with a mortgage of $140,000.00 for a total equity of $35,000.00; a 1999 Jeep automobile valued at $20,000.00 with a zero equity. The defendant shows a small Schwab institutional equity fund of $2,228.00; values her J.P. Morgan Phelps Dodge 401K at $38,230.00.
 Discussion
This is a marriage of 13 years. It is the first marriage for each of the parties. The plaintiff is age 35. The defendant is age 34. Both have high school educations; two minor children, Tiffani, now age 6; Travis, age 2.
The physical health and welfare of the parties has been treated in an earlier part of the memorandum.
It would appear that the defendant reached out for understanding and CT Page 13070 sympathy and support from another but exhibited genuine remorse for the same and desire to preserve the marital union and ask for forgiveness. Fortunately, both of the parties have some relative stability in their employment and each has been with their respective employer for a substantial period of time.
The plaintiff has also fallen from grace.
The photographs reflecting the damage to the plaintiffs motorcycle are understandable in the context of the emotional upset that prompted the defendant to act as she did when she learned of the friendship of the plaintiff.
Notwithstanding her own problems, it would appear that she had genuinely endeavored to put the marital union back together but apparently to no avail.
 The Law
The court has jurisdiction in this matter, both of the parties being physically present before the court and represented by counsel of record.
The pleadings were closed at the time of trial.
The court has considered the provisions of § 46b-81, § 46b-82
as to alimony, § 46b-83 as to the family home and § 46b-84 as concerns minor children.
The court has considered all of the applicable case law that governs a matter of this nature.
The court has considered the testimony of the parties, their candor or lack thereof, the various exhibits and the arguments of counsel.
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the breakdown or dissolution, the age, health, station, occupation, education and employability of each of the parties and the estate and needs of the parties.
The court has considered the respective financial positions of the plaintiff and the defendant as elicited at the time of trial and predicated upon their respective financial affidavits their prospect for future income and opportunity.
The court has considered the issue of fault. CT Page 13071
The court enters the following orders.
The court finds that the marriage has irretrievably broken down and dissolves the marriage and declares the parties to be single and unmarried.
Mindful of the proposed orders and the requests therein, the plaintiff and the defendant shall share joint legal custody of the two minor children, Tiffani Marie and Travis Mikel. The defendant mother shall be the primary custodial parent. The plaintiff father shall have reasonable rights of visitation and access as follows as spelled out in the request submitted to the court by the defendant.
a. Every Sunday from 10:00 a.m. to 4:00 p.m.
b. Every Monday, Tuesday and Thursday from 5:00 am. until 2:00 p.m. when the plaintiff shall drop off the youngest child at the sitter's.
c. On Wednesdays and Fridays from 5:00 a.m. until 2:00 p.m. when the plaintiff shall drop the youngest child off at the sitter's.
d. Holidays and vacations will be by mutual agreement.
The plaintiff shall pay child support in the amount of $212.00 per week in accordance with the guideline worksheet and shall be responsible for 43% of any work-related daycare costs and unreimbursed health-related costs for the children.
Both parents shall maintain health insurance for the benefit of the minor children as it is reasonably available through their respective places of employment. In the event that either party should lose their health benefits incident to their present employment, they shall immediately notify the other party of that fact.
The plaintiff husband shall maintain the life insurance presently available to him through his employment naming the two children as equal irrevocable beneficiaries of said insurance throughout their minority.
The plaintiff shall pay alimony to the defendant at the rate of $100.00 weekly for a term of six years. The alimony shall be modifiable as to amount but not as to the term. The alimony shall terminate earlier on the death of either party, remarriage of the defendant or cohabitation as defined by statute. CT Page 13072
The defendant has made no request for restoration of her maiden name.
The plaintiff shall quitclaim his equity interest in the property located at 411 Rockville Road, Voluntown to the defendant and the defendant shall be responsible for any and all mortgage payments, taxes and like charges associated with said property and hold the plaintiff harmless therefrom.
In recognition of the plaintiffs interest in said property, the defendant shall grant to the plaintiff a non-interest bearing mortgage deed and note as to said property in the amount of $15,000.00 payable in full when the youngest child attains age 18 or the sooner demise of the defendant or if the premises are sold, or the property is no longer used as the primary residence by the defendant and the minor children.
Each party may keep and retain their own retirement 401K annuity or pension funds with no claim one on the other, this includes the defendant's J.P. Morgan Phelps Dodge 401K and the plaintiff's Cigna retirement account.
Each party shall keep the vehicle presently in their possession and hold the other harmless from any debt incident to said vehicle.
Each party shall keep the personal property presently in their possession. Any dispute as to items of personal property not resolved by the parties shall be the subject of arbitration.
By virtue of his acknowledgment at the time of trial, the plaintiff shall pay to the defendant the sum of $428.00, an agreed arrearage, within a period of 30 days.
The plaintiff shall be solely responsible for the First USA credit card debt and hold the defendant harmless therefrom.
The court enters no orders as concerns attorney's fees as to either party.
Mindful of the requests made by each of the parties to the court at the time of trial, and mindful of the provisions of the recent Public Act as to matters of higher education, and mindful of the ages of the minor children and the substantial time frame which will elapse before they may be eligible for higher education, but in order to leave the door open for future consideration of that issue as to the obligation of the plaintiff and the defendant for higher education for the minor children as their circumstances may permit, the court enters an order as to each of the CT Page 13073 parties that they shall pay the sum of $100.00 a year toward the prospective post-high school education; subject of course to further hearing and a determination by a court of competent jurisdiction at that time.
Although admittedly at time of trial, the defendant represented that she would be willing to pay and be responsible for the costs incurred in restoring the motorcycle, which in a fit of anger she damaged at the time of being apprised of the plaintiffs decision not to return home, the court understands that the subject vehicle has been sold, admittedly at less than what might ordinarily have been received, but the circumstances surrounding the damage are understandable but not justified. The court, however, declines to enter any order incident thereto.
The child support appears to be within the confines of the guideline worksheets submitted to the court.
A contingent wage withholding may enter.
The alimony shall be taxable to the defendant wife and deductible by the plaintiff husband.
Although the matter was referred for mediation by Family Relations, no report was filed with the court nor was any witness from Family Relations called as a witness.
It is unclear as to what the final disposition was as concerns the plaintiffs arrest on domestic violence, no evidence thereof being presented.
Counsel shall prepare and submit the judgment file.
Austin, J. CT Page 13074